Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, ORm 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiff
AMY HAILEY *et al.*

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| AMY HAILEY, An Individual; ALISHA KUENZI, An Individual; and DANETTE BLAKE-SULLIVAN, An Individual, An Individual,<br><br>                              Plaintiffs,<br><br>v.<br><br>LEGACY HEALTH, A Public Benefit Corporation, and DOES 1 THROUGH 50, Inclusive,<br><br>                              Defendants | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a), AND AIDING AND ABETTING RELIGIOUS DISCRIMINATION [ORS 659A.030(1)(g)]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs AMY HAILEY, ALISHA KUENZI, and DANETTE BLAKE SULLIVAN hereby allege as follows:

## PARTIES

1.     Plaintiffs are, and at all times herein were, "healthcare providers and healthcare staff," as defined by Or. Admin. R. 333-019-1010(2)(f), who were employed at various hospitals operated in Oregon by Defendant LEGACY HEALTH ("LEGACY") before October 19, 2021.

2.      Plaintiffs also are, and at all times herein were, religious practitioners from varying denominations who, as permitted under Or. Admin. R. 333-019-1010(3)(a), sought from LEGACY religious exemptions from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19.  Not only did LEGACY deny all four Plaintiffs religious exemptions, LEGACY placed Plaintiffs on unpaid administrative leave on October 1, 2021 and fired them on October 19, 2021 for declining to receive COVID-19 vaccines in accordance with their sincerely held religious beliefs.

3.      Defendant LEGACY is, and at all times herein was, a non-profit public benefit corporation headquartered in Portland, Oregon.  *See* Attached **Exhibit "A"** [a true and accurate copy of LEGACY's proof of registration from the Oregon Secretary of State's website].  LEGACY operates hospitals and healthcare clinics throughout northern Oregon and is an employer within the definition of 42 U.S.C. § 2000e(b).

4.      The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiff, who therefore sues said Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiff thereby, as herein alleged.  Plaintiffs will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

5.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

6.      This Court has jurisdiction over Defendant LEGACY pursuant to 28 U.S.C. § 1331 because Plaintiffs' action arises under the laws of the United States.

## VENUE

7.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

8.      Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the counties of Multnomah, Washington, and/or Marion and all agents, employees, or other persons working for, or in concert with, Defendant LEGACY with regard to the events giving rise to this case are located in, employed in, and/or residents of the counties of Multnomah, Washington, and/or Marion.

## GENERAL ALLEGATIONS

9.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

10.      In August 2021 – roughly 18 months after the coronavirus ("COVID-19"), which was potentially deadly in some cases but had a survival rate exceeding 99 percent, reached the United States – the Oregon Health Authority ("OHA"), pursuant to an executive order from Oregon's then-governor, Kate Brown, sought to limit the spread of the potentially deadly coronavirus in the state's healthcare facilities by issuing an administrative rule (the "Mandate") requiring healthcare workers statewide to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.  However, the OHA's Mandate allowed healthcare workers to seek, and the healthcare providers who employed them to grant, exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

11.      In accordance with the OHA's Mandate, LEGACY required all of its employees to be vaccinated against COVID-19 by September 30, 2021.

12.      LEGACY allowed its employees to seek religious exemptions.  Any employee who sought one had to fill out and submit a form provided by LEGACY

and submit along with the form a letter from a religious authority in the employee's faith community explaining, on the religious authority's letterhead, "how administration of the COVID-19 vaccine conflicts with bona fide religious tenets or practices of [the employee's] faith."  LEGACY also permitted employees who had no religious authority to provide a letter on their own behalf explaining their religious objections to receive a COVID-19 vaccine.

13.    Religious exemption requests submitted by LEGACY employees would be judged by an "exception work group" (the "Exception Committee" or the "Committee") that included staff from LEGACY's Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control departments.

14.    Plaintiff AMY HAILEY ("HAILEY") is a practicing Christian who worked as a lead paramedic/emergency department technician at LEGACY's Silverton Medical Center ("Silverton"), in the County of Marion, for 15 years, starting in September 2006.  HAILEY's job included direct patient care as well as monitoring and ordering supplies and special equipment.

15.    Plaintiff ALISHA KUENZI ("KUENZI") is a practicing Christian worked as a nurse at Silverton's Family Birth Center for approximately 3½ years, starting in April 2018.  She served as a labor and postpartum nurse, a neonatal resuscitation specialist, and a relief charge nurse.

16.    Plaintiff DANETTE BLAKE-SULLIVAN ("BLAKE-SULLIVAN") is a practicing Christian who worked as a cook who prepared food for patients at LEGACY's Meridian Park Hospital ("Meridian Park") in Tualatin, in the County of Washington, for roughly 3½ years, starting in March 2018.  Although she worked in a 16-by-4-foot kitchen where she had no direct contact with patients, SULLIVAN qualified as a "healthcare provider[] or healthcare staff" as defined by the Mandate.  *See* Or. Admin. R. 333-019-1010(2)(f) [defining "healthcare providers and healthcare staff" to include dietary personnel].

17.     All Plaintiffs were qualified for their positions and had exemplary employment records.

18.     When researching the COVID-19 vaccines currently available in the United States when the OHA issued its Mandate, Plaintiffs discovered that the vaccines were created from cell lines taken from aborted fetuses.  In accordance with their Christian faith, Plaintiffs oppose abortion on religious grounds.

19.     In response to employees' concerns about the use of fetal tissue from aborted babies in the preparation of COVID-19 vaccines, LEGACY acknowledged on its website that the three manufacturers of COVID-19 vaccines then available in the United States – Pfizer, Moderna, and Johnson & Johnson – all used cells from aborted babies in the research and development of their respective vaccines.  *See* Attached **Exhibit "B"** [a true and accurate copy of the relevant page from LEGACY's website].  LEGACY attempted to justify those manufacturers' actions by asserting that (1) "[f]etal cells that are used are not from recent abortions.  They come from fetal cells from the 1970s and 1980s" and (2) "all fetal cells are removed from the vaccine before" the vaccine is administered.  *Id.*

20.     After much prayer and consideration, Plaintiffs individually determined that they could not, in good conscience in accordance with their faiths' principles, defile their bodies by allowing them to be injected with a vaccine derived from the cells of babies whose lives were taken via abortion or whose manufacturer used cells from aborted babies in the testing or manufacture of the vaccine.  Plaintiffs thus sought from LEGACY religious exemptions from The OHA's Mandate.  *See* Attached **Exhibits "C"-"E"** [copies of the religious exemption requests submitted to LEGACY by HAILEY, KUENZI, and SULLIVAN, respectively].

21.     LEGACY denied religious exemptions to all five Plaintiffs.  *See* Attached **Exhibits "F"-"H"** [copies of e-mails from LEGACY to HAILEY,

KUENZI, and SULLIVAN, respectively, denying their religious exemption requests]. LEGACY issued each of these denials on the same two grounds: (1) lack of consistency (because the employee had received vaccines in the past) and (2) lack of specificity (because the employee had not clearly stated a religious belief that was against receiving a COVID-19 vaccine).

22.    All Plaintiffs' exemption requests were processed through LEGACY's headquarters in Portland. The e-mails denying Plaintiffs' requests were sent from LEGACY's headquarters in Portland as well.

23.    An examination of LEGACY's e-mails to each Plaintiff indicates the e-mails are virtually identical – essentially, form letters not tailored to any individual who received one. *See* Exs. "F"-"H." LEGACY's e-mails provided no explanation of why the Exception Committee had found that Plaintiffs had failed to demonstrate consistency with regard to their religious beliefs and practices or why their religious exemption requests lacked enough specificity. *Id.*

24.    Concerning the consistency criterion, LEGACY made no allowance for the possibility that any of its employees (1) had received a vaccine as a child but stopped receiving them as adults; (2) held religious views concerning vaccines that had evolved since previously receiving vaccines as adults; and/or (3) did not have religious objections to vaccines in general, but did have a religious objection to COVID-19 vaccines due to their manufacturers' use of cells from aborted babies in the vaccines' research and development. LEGACY also made no allowance for the Christian doctrine of repentance – i.e., turning away from past sins and toward obedience to God by refusing to commit those sins any longer.

25.    Concerning the specificity criterion, it is unclear how specific LEGACY's Exception Committee wanted religious objectors' statements of objection to be or what information the Committee felt was missing from Plaintiffs' exemption requests. However, given that the Committee reportedly

rejected the exemption requests of nearly 800 employees – all of whom received the same standard e-mail informing them that LEGACY had rejected their requests, and all of whose requests had been rejected on the same grounds as Plaintiffs' – what is clear is that few, if any, LEGACY employees were able to provide enough specificity to satisfy the Committee.

26.     LEGACY's assertion to the contrary in its e-mails to each of the Plaintiffs denying their religious exemption requests notwithstanding [*see* Exs. "F"-"H"], LEGACY predestined each of the Plaintiffs for unpaid leave and termination and did so not based on individualized assessments of Plaintiffs' respective religious exemption requests, but as part of a larger program against employees who sought religious exceptions.  LEGACY's Exception Committee paid little to no attention to how much or how little detail employees who sought religious exemptions included in their exemption requests – the Committee simply denied exemption requests across the board, with few, if any, exceptions.

27.     LEGACY attempted to justify the Exception Committee's blanket, across-the-board denials of religious exemption requests like Plaintiffs' by offering the lame excuse that "there is no ideal way to determine a sincerely held religious belief[.]"  LEGACY did not engage in a good-faith, interactive exploration of potential accommodations with any of its employees, including Plaintiffs, as Title VII requires, nor did it give Plaintiffs any opportunity to appeal the Committee's decisions concerning their exemption requests.

28.     In each Plaintiff's case, concerning specificity, the reasons given for LEGACY's denial of a religious exemption were meritless:

> a. HAILEY succinctly explained what her beliefs were: "My body is a temple and God calls me to treat it as such.  The Holy Spirit dwells in me and leads me in the way God desires[,] giving discernment and wisdom."  Ex. "C."  Those two sentences were all

HAILEY could fit in the small amount of space on the OHA-provided form.  Implicit in HAILEY's statement is that God has led her to discern that taking a COVID-19 vaccine would defile her "temple" – and, accordingly, constitute sin.

b. KUENZI's opposition to receiving a COVID-19 was rooted in her belief that abortion is murder and that because "[a]borted fetal cell lines were used in research and testing of all COVID-19 vaccines … receiving one would be a sin."  *See* Ex. "D" [quoting Jeremiah 1:4-5 and Exodus 20:13].  Also, like HAILEY, KUENZI asserted that her body is a temple that she could not defile by taking a COVID-19 vaccine.  *Id.* [quoting 1 Corinthians 3:16-17].

c. Like KUENZI, BLAKE-SULLIVAN's opposition to receiving a COVID-19 vaccine had to do with vaccine manufacturers' use of cells from aborted babies in the production of the vaccines: "My faith is such that I may not benefit from nor participate in any aspects of abortion, and to do so would be a sin."  *See* Ex. "E." BLAKE-SULLIVAN connected that statement directly to the use of cells from aborted fetuses in the following paragraph. It is hard to provide more specificity than Petitioner did.

29.    Concerning consistency, LEGACY cited no evidence indicating how any of the Plaintiffs failed to meet that standard.  *See* Exs. "F"-"H."

30.    After rejecting Plaintiffs' religious exemption requests, LEGACY gave Plaintiffs three options: They could (1) receive a COVID-19 vaccine, and thereby violate their sincerely held religious beliefs as a condition of remaining employed; (2) take no action and be placed on unpaid administrative leave on October 1, 2021, with termination following on October 19, 2021; or (3) provide their written resignations to their respective supervisors.

31.   Because they could not, in good conscience, receive COVID-19 vaccines, and given the substantial likelihood that they would be unable to obtain unemployment benefits if they resigned from their respective positions, Plaintiffs reluctantly, and under protest, chose the second option.  As a result, LEGACY placed them on administrative leave and subsequently fired them.

32.   Since LEGACY terminated Plaintiffs' employment:

    a.   HAILEY was unemployed for nearly a year before accepting employment in a similar position at Santiam Hospital ("Santiam") in Stayton on September 22, 2022.  She lost $59,960.58 in income during that time, as well as $8,346.92 in paid time off and $5,396.48 in matching contributions to her retirement plan.  She has also had to pay an additional $14,102.55 in increased healthcare costs.  She earns $1.44 per hour less to work at Santiam than she did while working at Silverton, not counting the additional $1.75 per hour she would have received for working on weekends at Silverton.  HAILEY remains unvaccinated, and Santiam allows her to work with a religious exemption.

    b.   KUENZI is now employed at Providence Newberg Medical Center ("Providence").  She makes $0.52 per hour less at Providence than she did at Silverton.  Whereas KUENZI received a $2-per-hour differential from LEGACY for working on weekends, she only receives a $1.25-per-hour weekend differential from Providence.  She also receives $20 less per paycheck for medical benefits and roughly $27 less per paycheck for dental benefits.

    c.   BLAKE-SULLIVAN currently works at a Panda Express restaurant in Wilsonville, where she makes $20 per hour – $4.08 per hour less than she made at Meridian Park.  BLAKE-

SULLIVAN has been working at Panda Express since May 2022.
After LEGACY terminated her employment, BLAKE-SULLIVAN
applied for unemployment benefits, but Oregon's Department of
Human Resources and Employment Appeals Board both denied
them. BLAKE-SULLIVAN lost $3,967 per month in income, or
$27,769, during the seven months between LEGACY's
termination of her employment and her hiring at Panda Express.
She also lost a $100,000 life insurance policy for her spouse that
was paid for through LEGACY – BLAKE-SULLIVAN has been
unable to obtain life insurance for her husband, who is 65 and in
declining health, since her firing. In addition, BLAKE-
SULLIVAN had to go into forbearance on her mortgage for a year,
incurring $12,000 of additional debt. She had to do without cable
and internet service for a year and also had to borrow money from
family to make ends meet while seeking new employment.

33.    Due to LEGACY's termination of their employment, Plaintiffs have
also suffered noneconomic damages as follows:

a. HAILEY has experienced weight loss, stress-related hormonal
imbalances, loss of sleep, anxiety, and depression;

b. KUENZI experienced stress from having lost health insurance for
entire family – including and especially her son, who suffers from
epilepsy – not to mention the stress of having to make ends meet
for a family of four while unemployed. KUENZI tried to get
insurance through the Oregon Health Plan and was denied.
KUENZI also had to deal with the stress of having other
prospective healthcare employers ask why she "left" her previous
employer when it was not entirely her choice; and

_____

     c. BLAKE-SULLIVAN has experienced increased stress and anxiety.  She has suffered panic attacks, night sweats, stress-related nightmares, loss of appetite, and weight loss.

34.     As a condition of filing the herein lawsuit, Plaintiffs have each obtained right-to-sue letters from the Equal Employment Opportunity Commission.  Those letters are attached hereto as **Exhitibs "I"-"K."**

35.     Attached hereto as **Exhibits "L"-"N"** are printouts from the website TimeandDate.com showing when the 90-day statute of limitations set forth in each right-to-sue letter is set to expire.  Plaintiffs included these printouts as exhibits to show that they timely filed this lawsuit in compliance with their respective letters.

### FIRST CAUSE OF ACTION:
**Violation of Title VII**
**[42 U.S.C. § 2000e-2]**
**Against Defendant LEGACY**

36.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

37.     Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

38.     The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief[.]"  42 U.S.C. § 2000e(j).

39.     For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

40.     Defendant LEGACY qualifies as an employer under Title VII.

41.     As practicing Christians, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

42.     Plaintiffs at all times relevant herein were employees within the definition set forth in 42 U.S.C. § 2000e(f).

43.     Plaintiffs each have a bona fide religious belief that they cannot defile their bodies by taking into their bodies a vaccine derived from the cells of babies whose lives were taken via abortion or whose manufacturer used cells from aborted fetuses in the research, testing, and development of the vaccine.

44.     Plaintiffs' bona fide religious belief against taking COVID-19 vaccines conflicted with their employment-related duty to receive a COVID-19 vaccine in accordance with The OHA's Mandate, as the COVID-19 vaccines available on the market in 2021 were all made by manufacturers who used cells from aborted fetuses in the vaccines' testing and development.

45.     Plaintiffs informed their employer, Defendant LEGACY, of the conflicts between their religious beliefs and their employment-related duties. *See* Exs. "C"-"E."

46.     Defendant LEGACY subjected Plaintiffs to discriminatory treatment by subjecting them to three adverse employment actions: (1) Threatening to place them on unpaid leave and ultimately terminating their employment if they did not receive a vaccine [*see* Exs. "F"-"H"]; (2) placing them on unpaid leave on October 1, 2021; and (3) terminating their employment on October 19, 2021.

47.     Defendant LEGACY made no attempt to accommodate Plaintiffs' sincerely held religious beliefs, nor did LEGACY make any assertion to Plaintiffs that LEGACY would incur undue hardship by accommodating their beliefs. LEGACY simply attempted to justify its denials of Plaintiffs' religious exemption requests by asserting that the Exception Committee did not find Plaintiffs' asserted beliefs to be sincerely held, even though Plaintiffs had provided the Committee evidence to the contrary.

48.    Defendant LEGACY could and should have provided reasonable accommodations for Plaintiffs' beliefs, as accommodations that would have allowed Plaintiffs to continue working while significantly limiting the likelihood of spreading COVID-19 were available.  Such accommodations included requiring Plaintiffs to:

    a.  Wear power air purifying respirators, N95 or surgical masks, clean hospital-provided gowns or scrubs, hair covers, goggles, gloves, and/or shoe covers;

    b.  Submit to weekly COVID-19 testing, temperature checks, and screening questions;

    c.  Wash their hands or use hand sanitizer and sanitizing wipes regularly; and

    d.  Engage in social distancing (six feet or more) from patients and fellow employees when possible.

49.    LEGACY offered none of these accommodations, opting to take adverse employment actions against Plaintiffs instead.

50.    Religious discrimination is truly what motivated Defendant LEGACY to get rid of Plaintiffs, any assertion LEGACY might make to the contrary notwithstanding.

51.    Based on the foregoing, Defendant LEGACY has discriminated against Plaintiff in violation of Title VII.

**SECOND CAUSE OF ACTION:**
**Violation of State Law Prohibiting Religious Discrimination**
**[ORS 659A.030(1)(a)]**
**Against Defendant LEGACY**

52.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

53. Like Title VII, ORS 659A.030(1)(a) prohibits employers from discharging individuals from employment on the basis of the individuals' religion, as Defendant LEGACY has done here.

54. Because Oregon's state law prohibiting employers from discriminating on the basis of religion is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical, Plaintiffs decline to restate the facts as set forth in their first cause of action, as those facts have already been incorporated as though fully set forth herein.

55. Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiffs, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]" In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

56. Under Oregon law, a jury may award up to $500,000 in noneconomic damages. *See* ORS 31.710(1). Oregon law defines "noneconomic damages" to include "subjective, nonmonetary losses, including but not limited to … mental suffering, emotional distress, … inconvenience and interference with normal and usual activities apart from gainful employment." ORS 31.705(2)(b)

57. Plaintiffs have endured mental suffering and emotional distress due to LEGACY's unlawful discrimination against them. They have also suffered interference with normal and usual activities.

58. ORS 659A.885(3) allows for punitive damages against employers such as Defendant LEGACY who violate ORS 659A.030(1)(a). Oregon law places no cap on punitive damages. *See Smith v. Ethicon, Inc.*, 2022 U.S. Dist. 98543 at *2 (D. Or. June 2, 2022).

59.     Based on the foregoing, in addition to violating Title VII, Defendant LEGACY has violated ORS 659A.030(1)(a).

## THIRD CAUSE OF ACTION:
### Aiding and Abetting Religious Discrimination
### [ORS 659A.030(1)(a)]
### Against Defendants DOES 1-50

60.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

61.     ORS 659A.030(1)(g) prohibits any person from aiding and abetting an employer from engaging in employment discrimination.

62.     In their roles as members of Defendant LEGACY's Exceptions Committee, Defendants DOES 1-50 – whose identities have yet to be determined, and whom Plaintiffs intend to add as Defendants after learning their identities through discovery – acted in concert with, or gave substantial assistance to, LEGACY in unlawfully discriminate against Plaintiffs on account of Plaintiffs' respective religions.  Defendants DOES 1-50 did this knowing that it was unlawful for LEGACY, as Plaintiffs' employer, to discriminate against Plaintiffs.

63.     Because Defendant LEGACY carried out its religious discrimination against Plaintiffs with the assistance of Defendants DOES 1-50, Defendants DOES 1-50 should be held individually and personally liable for their conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants LEGACY and DOES 1-50 as follows:

## ON ALL CAUSES OF ACTION:

1.     For economic damages in an amount according to proof at trial;

2.     For non-economic damages in an amount according to proof at trial;

3.      For punitive damages in an amount according to proof at trial;

4.      For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

5.      For such other and further relief as the Court may deem proper.


Dated: January 30, 2023                        PACIFIC JUSTICE INSTITUTE
                                               __/s/ RAY D. HACKE_____
                                               Ray D. Hacke
                                               Attorney for Plaintiffs
                                               AMY HAILEY *et al.*

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon.  I am over the age of eighteen and not a16 party to the within action; my business address is 1850 45th Ave., Suite 33, Salem, OR 97305.

On or about January 30, 2023, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a), AND AIDING AND ABETTING RELIGIOUS DISCRIMINATION [ORS 659A.030(1)(g)]**

### PLEASE SEE ATTACHED SERVICE LIST

_____BY MAIL:  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the office of the addressee(s).

_____X__BY ELECTRONIC MAIL: I caused such documents to be served on the interested parties via electronic mail and through the court's ECF website.

_____(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__(Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 30, 2023, at Salem, Oregon.


*/s/ LAUREN PEFFERLE*
Lauren Pefferle

_____

## SERVICE LIST

Brenda K. Baumgart
Attorney For Defendant
Stoel Rives LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
E-mail: brenda.baumgart@stoel.com

# EXHIBIT "A"



## Business Name Search

New Search    Printer Friendly    <span>Business Entity Data</span>    **10-31-2022 14:31**

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 091184-15 | DNP | ACT | OREGON | 11-04-1970 | 11-04-2022 | **YES** |
| Entity Name | LEGACY HEALTH | | | | | |
| Foreign Name | | | | | | |
| Non Profit Type | PUBLIC BENEFIT | | | | | |

### Online Renewal:

[ Renew Online ]

Click here to generate and print an annual report.

New Search    Printer Friendly    <span>Associated Names</span>

| Type | PPB | PRINCIPAL PLACE OF BUSINESS | | |
|---|---|---|---|---|
| Addr 1 | LEGAL SERVICES DEPARTMENT | | | |
| Addr 2 | 1919 NW LOVEJOY STREET | | | |
| CSZ | PORTLAND | OR | 97209 | Country | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| Type | AGT | REGISTERED AGENT | Start Date | 09-17-2021 | Resign Date |
|---|---|---|---|---|---|
| Name | ALEXANDER | | GLADNEY | | |
| Addr 1 | 1919 NW LOVEJOY ST | | | | |
| Addr 2 | | | | | |
| CSZ | PORTLAND | OR | 97209 | Country | UNITED STATES OF AMERICA |

| Type | MAL | MAILING ADDRESS | |
|---|---|---|---|
| Addr 1 | 1919 NW LOVEJOY | | |
| Addr 2 | | | |
| CSZ | PORTLAND | OR | 97209 | Country | UNITED STATES OF AMERICA |

| Type | PRE | PRESIDENT | | Resign Date |
|---|---|---|---|---|
| Name | KATHRYN | | CORREIA | |

| Addr 1 | 1919 NW LOVEJOY ST | | | | | |
|--------|--------------------|---|---|---|---|---|
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97209 | | Country | UNITED STATES OF AMERICA |

| Type | SEC | SECRETARY | | | | Resign Date | |
|------|-----|-----------|---|---|---|-------------|---|
| Name | ALEXANDER | | GLADNEY | | | | |
| Addr 1 | LEGAL SERVICES DEPARTMENT | | | | | | |
| Addr 2 | 1919 NW LOVEJOY | | | | | | |
| CSZ | PORTLAND | OR | 97209 | | Country | UNITED STATES OF AMERICA | |

**New Search      Printer Friendly**

# Name History

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|----------------------|-----------|-------------|------------|----------|
| LEGACY HEALTH | EN | CUR | 04-05-2010 | |
| LEGACY HEALTH SYSTEM | EN | PRE | 03-31-1989 | 04-05-2010 |
| HEALTHLINK | EN | PRE | 10-11-1985 | 03-31-1989 |
| METROPOLITAN HOSPITALS, INC. | EN | PRE | 05-19-1971 | 10-11-1985 |
| SOUTHWEST HOSPITAL | EN | PRE | 11-04-1970 | 05-19-1971 |

Please read before ordering Copies.

**New Search      Printer Friendly**

# Summary History

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|-----------------|--------|------------------|----------------|--------|-------------------|--------------|
| | AMENDED ANNUAL REPORT | 09-17-2021 | | FI | Agent | |
| | AMENDED ANNUAL REPORT | 10-28-2020 | | FI | Agent | |
| | RESTATED ARTICLES | 01-31-2020 | | FI | | |
| | RESTATED ARTICLES | 01-31-2020 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-25-2019 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-13-2018 | | FI | | |
| | RESTATED ARTICLES | 12-18-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-15-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-21-2016 | | FI | | |
| | RESTATED ARTICLES | 09-19-2016 | | FI | | |
| | RESTATED ARTICLES | 05-31-2016 | 06-01-2016 | FI | | |
| | AMENDED ANNUAL REPORT | 10-05-2015 | | FI | | |
| | AMENDED ANNUAL REPORT | 10-13-2014 | | FI | | |

| | | | | | |
|---|---|---|---|---|---|
| | RESTATED ARTICLES | 04-18-2014 | | FI | |
| | AMENDED ANNUAL REPORT | 09-16-2013 | | FI | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 09-11-2013 | | FI | Agent |
| | REINSTATEMENT AMENDED | 03-14-2013 | | FI | |
| | ADMINISTRATIVE DISSOLUTION | 01-04-2013 | | SYS | |
| | AMENDED ANNUAL REPORT | 10-25-2011 | | FI | |
| | AMENDED ANNUAL REPORT | 10-21-2010 | | FI | |
| | RESTATED ARTICLES | 04-05-2010 | | FI | |
| | ARTICLES OF AMENDMENT | 04-05-2010 | | FI | Name |
| | AMENDED ANNUAL REPORT | 11-03-2009 | | FI | |
| | AMENDED ANNUAL REPORT | 10-29-2008 | | FI | |
| | AMENDED ANNUAL REPORT | 11-07-2007 | | FI | |
| | RESTATED ARTICLES | 10-30-2007 | | FI | |
| | AMENDED ANNUAL REPORT | 10-20-2006 | | FI | |
| | ANNUAL REPORT | 01-04-2006 | | FI | |
| | RESTATED ARTICLES | 05-05-2005 | | FI | |
| | REINSTATEMENT AMENDED | 01-27-2005 | | FI | |
| | ADMINISTRATIVE DISSOLUTION | 12-30-2004 | | SYS | |
| | RESTATED ARTICLES | 12-10-2003 | | FI | |
| | ANNUAL REPORT PAYMENT | 12-10-2003 | 12-09-2003 | SYS | |
| | ANNUAL REPORT PAYMENT | 10-17-2002 | | SYS | |
| | ANNUAL REPORT PAYMENT | 11-02-2001 | | SYS | |
| | STRAIGHT RENEWAL | 11-20-2000 | | FI | |
| | NB AMENDMENT | 11-14-2000 | | FI | |
| | AMENDED RENEWAL | 12-29-1999 | | FI | |
| | NB AMENDMENT | 01-28-1999 | | FI | |
| | CHANGED RENEWAL | 11-06-1998 | | FI | |
| | AGENT/AUTH REP CHNG | 11-06-1998 | | FI | |
| | STRAIGHT RENEWAL | 10-27-1998 | | FI | |
| | NB AMENDMENT | 06-24-1998 | | FI | |

| | | | | | |
|---|---|---|---|---|---|
| 📄 | MERGER | 04-16-1998 | | FI | |
| 📄 | NB AMENDMENT | 04-03-1998 | | FI | |
| | AGENT/AUTH REP CHNG | 01-30-1998 | | FI | |
| | STRAIGHT RENEWAL | 10-24-1997 | | FI | |
| 📄 | NB AMENDMENT | 02-28-1997 | | FI | |
| | STRAIGHT RENEWAL | 12-18-1996 | | FI | |
| | STRAIGHT RENEWAL | 11-03-1995 | | FI | |
| 📄 | NB AMENDMENT | 06-02-1995 | | FI | |
| | ASSOCIATED NAME CHNG | 06-02-1995 | | FI | |
| | STRAIGHT RENEWAL | 10-10-1994 | | FI | |
| 📄 | NB AMENDMENT | 12-30-1993 | | FI | |
| | AMENDED RENEWAL | 09-27-1993 | | FI | |
| 📄 | MERGER | 04-06-1993 | | FI | |
| | AMENDED RENEWAL | 10-09-1992 | | FI | |
| | NB AMENDMENT | 10-07-1992 | | FI | |
| | ASSOCIATED NAME CHNG | 10-07-1992 | | FI | |
| | AGENT/AUTH REP CHNG | 06-26-1992 | | FI | |
| 📄 | NB AMENDMENT | 06-16-1992 | | FI | |
| | ASSOCIATED NAME CHNG | 06-16-1992 | | FI | |
| | AMENDED RENEWAL | 09-26-1991 | | FI | |
| 📄 | NB AMENDMENT | 03-25-1991 | | FI | |
| 📄 | NB AMENDMENT | 02-06-1991 | | FI | |
| 📄 | MERGER | 12-21-1990 | | FI | |
| | AGENT/AUTH REP CHNG | 10-29-1990 | | FI | |
| | AMENDED RENEWAL | 10-29-1990 | | FI | |
| 📄 | NB AMENDMENT | 12-22-1989 | | FI | |
| | AMENDED RENEWAL | 11-01-1989 | | FI | |
| | CORRECTION OF ANNUAL | 05-11-1989 | | FI | |
| 📄 | NB AMENDMENT | 04-12-1989 | | FI | |
| 📄 | MERGER | 03-31-1989 | | FI | |
| | ENTITY NAME CHANGE | 03-31-1989 | | FI | |
| | ASSOCIATED NAME CHNG | 03-31-1989 | | FI | |
| | NB AMENDMENT | 03-31-1989 | | FI | |
| 📄 | NB AMENDMENT | 01-26-1989 | | FI | |
| | AMENDED RENEWAL | 10-20-1988 | | FI | |
| | AMENDED RENEWAL | 11-09-1987 | | FI | |
| | ASSOCIATED NAME | 10-19-1987 | | FI | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | CHNG | | | | | |
| | NB AMENDMENT | 04-09-1987 | | FI | | |
| | STRAIGHT RENEWAL | 10-08-1986 | | FI | | |
| | ASSOCIATED NAME CHNG | 04-02-1986 | | FI | | |
| | STRAIGHT RENEWAL | 11-21-1985 | | FI | | |
| | RESTATED ARTICLES | 10-11-1985 | | FI | | |
| | ENTITY NAME CHANGE | 10-11-1985 | | FI | | |
| | NC AMENDMENT | 09-30-1985 | | FI | | |
| | STRAIGHT RENEWAL | 11-29-1984 | | FI | | |
| | NC AMENDMENT | 11-16-1984 | | FI | | |
| | NC AMENDMENT | 09-10-1984 | | FI | | |
| | RESTATED ARTICLES | 05-05-1983 | | FI | | |
| | AMENDMENT | 03-21-1975 | | FI | | |
| | AMENDMENT | 01-08-1973 | | FI | | |
| | AMENDMENT | 05-19-1971 | | FI | | |
| | ENTITY NAME CHANGE | 05-19-1971 | | FI | | |
| | NEW | 11-04-1970 | | FI | | |

# EXHIBIT "B"



# Top COVID-19 vaccine safety questions

Updated September 22, 2021

- Can I trust the vaccine approval process?
- Is the vaccine safe?
- Is the vaccine safe for pregnancy?
- Is the vaccine safe if I have an autoimmune disorder?
- Do I still need the vaccine if I have had COVID-19? What about natural immunity?
- Why should I get the vaccine if people who got the vaccine are still getting sick?
- What is the difference between the Pfizer, Moderna, and Johnson & Johnson (J&J) vaccines?
- How does mRNA affect my body?
- What about long term side effects?
- How is the FDA-approved Pfizer vaccine different than the EUA-approved Pfizer vaccine? What is Comirnaty?
- Do the vaccines include fetal cells?
- What if I or someone I live with recently got sick with COVID-19? When do I get my vaccine?

## Can I trust the vaccine approval process?

- Yes. Clinical studies can take a long time because it usually takes a long time to find enough volunteers and people who have the disease. We did not have that problem with COVID-19.

- Researchers were able to make the clinical trial process more efficient while keeping safety a top priority.

- Reference: Unwavering Regulatory Safeguards for COVID-19 Vaccines | Vaccination | JAMA | JAMA Network



**LEGACY**
H E A L T H

**Exhibit 1**

**Do the vaccines include fetal cells?**

- No. The vaccines do not include any fetal cells.

- Pfizer and Moderna used fetal cells when researching the vaccines to see if the vaccines would work. Johnson & Johnson use fetal cells to prepare the vaccine, but it is purified and all fetal cells are removed from the vaccine before you get it.

- Fetal cells that are used are not from recent abortions. They come from fetal cells from the 1970s and 1980s.

- References: COVID-19 Vaccines & Fetal Cell Lines and COVID-19 Vaccines and Fetal Cells (Michigan DHHS)

**What if I or someone I live with recently got sick with COVID-19? When do I get my vaccine?**

- If you had COVID-19, you can get the vaccine as soon as you are done with isolation. This is when you do not have symptoms anymore and it has been at least 10 days since your symptoms first started. Check with your doctor if you go to the hospital or if you are immunocompromised.

- If you are exposed to someone with COVID-19, you can get the vaccine as soon as you are done with quarantine. This means after 14 days without any symptoms or sooner if you got a negative COVID-19 test.

- If you got a COVID monoclonal antibody treatment (casirivimab/imdevimab, sotrovimab, or bamlanivimab/etesevimab), you should wait 90 days before you get the vaccine.

- References: When to Get the Covid Vaccine After Having Covid – Cleveland Clinic and Frequently Asked Questions about COVID-19 Vaccination | CDC and COVID-19 Quarantine and Isolation | CDC

**Exhibit 1**

# EXHIBIT "C"

OFFICE OF THE DIRECTOR
Office of the State Public Health Director



# COVID-19 Vaccine Religious Exception Request Form

I am requesting an exception from the COVID-19 vaccination on the basis of a sincerely held religious belief.

| Individual's name: Amy M. Hailey | Date of birth: 12/10/1986 |
|---|---|
| Phone number: 503-949-8321 | |
| Employer/Organization: Legacy Silverton Medical Center | Job Title/Position: Lead ED Tech/Paramedic |

## Please check the boxes below as appropriate and complete related questions:

☒ Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination. My body is a Temple and God calls me to treat it as such. The Holy Spirit dwells in me and leads me in the way God desires giving me a spirit of discernment & wisdom.

I certify the above information to be true and accurate and that I sincerely hold the religious beliefs described above.

| Signature: | Date: 8/29/21 |
|---|---|

Please note that if your exception request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this exception accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673- 2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

OHA 3871 (8/25/2021)

# EXHIBIT "D"

August 30th, 2021

Legacy Employee Health and Human Resources,

I hereby state my right to a religious exemption from the COVID-19 vaccinations. My personal religious freedoms are protected by the First Amendment of the U.S. Constitution. I am a Christian who believes in the Bible and my exemption request is based on my sincerely held religious beliefs.

I am objecting to the COVID-19 vaccines because I believe in and follow God and the principles laid out in His Words. I have a deeply held belief that vaccines violate them. The Bible states "Then the word of the LORD came unto me, saying, Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee a prophet unto the nations" (Jeremiah 1:4 - 5). My faith establishes that abortion is the murder of human beings and murder is a sin. The Bible teaches life begins at conception and abortion is wrong at any stage. One of the Ten Commandments is "Thou Shalt Not Kill" (Exodus 20:13). I cannot in good conscience receive any of the COVID-19 vaccines. Aborted fetal cell lines were used in the research and testing of all current COVID vaccines, so receiving one would be a sin.

The Bible also teaches Christians that our bodies are sacred and we need to protect them from harm.  "Know ye not that ye are the temple of God, and that the Spirit of God dwelleth in you? If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are" (1 Corinthians 3:16-17). I sincerely belief the COVID-19 vaccinations would be harmful to my body due to being produced using practices that violate my closely held religious beliefs, and they contain many additives that are designed to alter my body.

I cannot sacrifice my religious beliefs simply to comply with the compelled vaccination policy. I have a responsibility to honor the Lord through my body and my choices, and that is why I am submitting this request for religious exemption.


Respectfully,

Alisha Kuenzi
Employee #50936
971-275-5074
Ajkuenzi14@gmail.com
Legacy Silverton Medical Center
Family Birth Center

# EXHIBIT "E"

Name: Danette Blake-Sullivan
Phone Number: 503-951-3700

Employee #: 50927
Email: dblake@lhs.org
nettas67@wbcable.net

Department: Food and Nutrition
Date: August 30, 2021

Site: Meridian Park

TO WHOM IT MAY CONCERN:

I respectfully request an exemption from the mandated COVID-19 vaccine(s) due to my sincerely held religious beliefs and my relationship with God, through His son, Jesus Christ. My faith is based on the belief in Jesus Christ, not a specific religion or denomination.

From the moment I was saved, I believe the Holy Spirit entered me, giving me direction about how to conduct my life, what to believe and do concerning not only Biblical matters, but concerning my relationship to the world, my fellow citizens, and other believers. I also believe he guides me daily concerning my conduct at work, how I interact with supervisors, other employees, and anyone else I encounter throughout my day.

The Bible teaches that a believer must have a clear conscience. Hebrews 10:26 states, "For if we go on sinning deliberately after receiving the knowledge of truth, there no longer remains a sacrifice for sins." I have prayed for guidance and asked the Holy Spirt to lead me as to what to do regarding the COVID-19 vaccination(s). If I go against what the Holy Spirit is guiding me to do, I am sinning and endangering my relationship with God and my conscience would be violated.

From my extensive research, I understand the COVID-19 vaccine(s) have either been developed from, or tested for efficacy on, fetal cell lines from aborted fetal cells.' My faith is such that I may not benefit from nor participate in any aspects of abortion, and to do so would be a sin.

Using aborted fetal cells and cell lines to develop and test the vaccine is also against my faith. Jeremiah 1:5 states; "Before I formed you in the womb I knew you, and before you were born, I consecrated you". This verse emphasizes that all life, born or unborn, is valuable to the Lord. Merriam-Webster's definition of an Abortion is "the termination of a pregnancy after, accompanied by, resulting in, or closely followed by the death of the embryo or fetus." The termination of the embryo or fetus by abortion, no matter if voluntary, is murder and according to Deuteronomy 5:17 "You shall not murder", which is one of the Ten Commandments.

By taking the COVID-19 vaccination(s), I would put something unholy into my body. Therefore, I cannot take the COVID-19 vaccination(s) and keep a clear conscience nor continue to have a strong relationship with Jesus. Making me to adhere to the COVID-19 vaccine(s) mandate would force me to go against my beliefs and sin against my God.

1

EXHIBIT 2

My request for this accommodation is that I am exempt from the COVID-19 vaccination(s); to participate normally in all duties, responsibilities, activities, and events without any form of discrimination, harassment, intimidation, separation, or segregation. My religious beliefs, religious rights and my rights to privacy are protected and guaranteed by the Constitution of the United States of America, TITLE VII of the Civil Rights Act of 1964, and the Constitution of the State of Oregon.

Even though I am requesting an exemption from the COVID-19 vaccination(s), I am willing to comply and adhere to the mandated COVID-19 protocols in place prior to the mandated vaccine requirement.

I know in my heart I am an excellent employee; might I add I love my job at Legacy, and it is arguably the best job I have ever had.  However, I find myself in the awkward position of obeying the Holy Spirit or obeying the state and my employer concerning this mandate. As hard as it is for me, I recognize how difficult it must be for you to evaluate someone's sincerely held beliefs.  I pray God gives you wisdom and guidance during this decision-making process.

I look forward to your decision and would ask if you have questions of me, you put them in writing so my counsel may review them with me so there is no misunderstanding, and I am able to give an appropriate and complete response.


Thank you for your consideration,

Danette Blake-Sullivan

EXHIBIT 2

1.  http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf

2

# EXHIBIT "F"

Thank you for submitting your exception request for the COVID-19 vaccine policy.

For your privacy, your name was removed from your exception request before it was reviewed by the exception work group. No details from your request, or the review process, have been shared with leaders or others.

The exception work group, which includes staff from Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control, believes there is no ideal way to determine a sincerely held religious belief and decided to use the following criteria:

- Consistency (have you have recently received other vaccines)
- Specificity (your religious belief is clearly stated, and that religious belief is specifically against receiving the COVID-19 vaccine)

**Your request was carefully reviewed and your request for religious exception was denied because the information you provided does not meet one or more of the above criteria.**

Please know that the Exception Committee carefully reviewed and applied a consistent standard to every request. This was a detailed process intended to provide a full and thorough review.

This decision on your request provides a few days for you to consider your next steps as our Sept. 30 vaccine requirement deadline nears. Please see the instructions below from Human Resources regarding your options.

Sincerely,

*COVID-19 Vaccine Exception Workgroup*

**Exception Request Denial Instructions**

Because your exception is denied, you have three options:

1. Take action to keep your job by getting vaccinated as soon as possible. Use MyHealth to schedule a vaccine appointment, email EmployeeHealth@lhs.org to request one, or find one in the community. If you have vaccine questions or need help scheduling an appointment, call 503-415-4800. Please note that hotline staff are clinical experts and cannot help you with your exception request. If you've been vaccinated and need to provide documentation, email a picture of your vaccine card to covid19@lhs.org.
2. Take no action and be placed on administrative leave on Oct. 1, with termination following as soon as Oct. 19.
3. Resign your position by alerting your manager in writing.

For more information on the vaccine requirement, please visit the COVID-19 intranet's vaccine page.



LEGACY
H E A L T H

# EXHIBIT "G"

**COVID-19 Vaccine Exception Workgroup** <legacycovidvaccine@lhs.org> Unsubscribe

Mon, Sep 27, 2021, 11:13 AM

to me

Thank you for submitting your exception request for the COVID-19 vaccine policy.

For your privacy, your name was removed from your exception request before it was reviewed by the exception work group. No details from your request, or the review process, have been shared with leaders or others.

The exception work group, which includes staff from Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control, believes there is no ideal way to determine a sincerely held religious belief and decided to use the following criteria:

- Consistency (have you have recently received other vaccines)
- Specificity (your religious belief is clearly stated, and that religious belief is specifically against receiving the COVID-19 vaccine)

**Your request was carefully reviewed and your request for religious exception was denied because the information you provided does not meet one or more of the above criteria.**

Please know that the Exception Committee carefully reviewed and applied a consistent standard to every request. This was a detailed process intended to provide a full and thorough review.

This decision on your request provides a few days for you to consider your next steps as our Sept. 30 vaccine requirement deadline nears. Please see the instructions below from Human Resources regarding your options.

Sincerely,

COVID-19 Vaccine Exception Workgroup

**Exception Request Denial Instructions**

Because your exception is denied, you have three options:

1. Take action to keep your job by getting vaccinated as soon as possible. Use MyHealth to schedule a vaccine appointment, email EmployeeHealth@lhs.org to request one, or find one in the community. If you have vaccine questions or need help scheduling an appointment, call 503-415-4800. Please note that hotline staff are clinical experts and cannot help you with your exception request. If you've been vaccinated and need to provide documentation, email a picture of your vaccine card to covid19@lhs.org.
2. Take no action and be placed on administrative leave on Oct. 1, with termination following as soon as Oct. 19.
3. Resign your position by alerting your manager in writing.

For more information on the vaccine requirement, please visit the COVID-19 intranet's vaccine page.

Legacy Health | 1919 NW Lovejoy, Portland, OR 97209

Unsubscribe ajkuenzi14@gmail.com

Update Profile | Constant Contact Data Notice

Sent by legacycovidvaccine@lhs.org

# EXHIBIT "H"

## Decision on your exception request

COVID-19 Vaccine Exception Workgroup <legacycovidvaccine@lhs.org>
Mon 9/27/2021 11:12 AM
To: Blake Sullivan, Dani LMP Food and Nutrition <DBLAKESU@LHS.ORG>

Thank you for submitting your exception request for the COVID-19 vaccine policy.

For your privacy, your name was removed from your exception request before it was reviewed by the exception work group. No details from your request, or the review process, have been shared with leaders or others.

The exception work group, which includes staff from Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control, believes there is no ideal way to determine a sincerely held religious belief and decided to use the following criteria:

- Consistency (have you have recently received other vaccines)
- Specificity (your religious belief is clearly stated, and that religious belief is specifically against receiving the COVID-19 vaccine)

**Your request was carefully reviewed and your request for religious exception was denied because the information you provided does not meet one or more of the above criteria.**

Please know that the Exception Committee carefully reviewed and applied a consistent standard to every request. This was a detailed process intended to provide a full and thorough review

This decision on your request provides a few days for you to consider your next steps as our Sept. 30 vaccine requirement deadline nears. Please see the instructions below from Human Resources regarding your options.

Sincerely,

COVID-19 Vaccine Exception Workgroup


Exception Request Denial Instructions

Because your exception is denied, you have three options:

1. Take action to keep your job by getting vaccinated as soon as possible. Use MyHealth to schedule a vaccine appointment, email EmployeeHealth@lhs.org to request one, or find one in the community. If you have vaccine questions or need help scheduling an appointment, call 503-415-4800. Please note that hotline staff are clinical experts and cannot help you with your exception request. If you've been vaccinated and need to provide documentation, email a picture of your vaccine card to covid19@lhs.org.
2. Take no action and be placed on administrative leave on Oct. 1, with termination following as soon as Oct. 19.
3. Resign your position by alerting your manager in writing.

For more information on the vaccine requirement, please visit the COVID-19 intranet's vaccine page.



EXHIBIT #5
Page 7

# EXHIBIT "I"

 

**VAL HOYLE**
Labor Commissioner

December 30, 2022

AMY HAILEY
C/O PACIFIC JUSTIC INSTITUTE
PO BOX 5229
SALEM, OR 97304

RE:    Complainant:    Amy Hailey
       Respondent:     Legacy Health
       Case #:         EEEMRG220303-40256
       EEOC #:         38D-2022-00302

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

jl

**Date of Mailing**: December 30, 2022

cc:    Ray D Hacke, Complainant's Attorney

 Portland · Salem · Eugene      **oregon.gov/boli**
Help@boli.oregon.gov      (971) 245-3844
**Ore. Relay TTY: 711**

  

# EXHIBIT "J"

ALISHA KUENZI
25467 S HWY 99 E
AURORA, OR 97002

RE:    Complainant:    Alisha Kuenzi
       Respondent:     Legacy Health
       Case #:         EEEMRG220301-40235
       EEOC #:         38D-2022-00299

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note:  If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: December 27, 2022

cc:    Caroline Hoffman Janzen, Complainant's Attorney



# EXHIBIT "K"

**LABOR & INDUSTRIES**

**VAL HOYLE**
Labor Commissioner

December 21, 2022

DANETTE BLAKE SULLIVAN
C/O RAY D HACKE, PACIFIC JUSTICE INSTITUTE
PO BOX 27660
SACRAMENTO, CA 95827

RE:    Complainant:    Danette Blake Sullivan
       Respondent:    Legacy Health
       Case #:         EEEMRG220301-10254
       EEOC #:         38D-2022-00305

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

jl

**Date of Mailing**: December 21, 2022

cc:    Caroline Hoffman Janzen, Complainant's Attorney
       Ray D Hacke, Complainant's Attorney


**oregon.gov/boli**
Help@boli.oregon.gov


(971) 245-3844
Ore. Relay TTY: 711



# EXHIBIT "L"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days      Add Days      Workdays      Add Workdays      Weekday      Week №

From **Friday, December 30, 2022**
Added 90 days

## Result: Thursday, March 30, 2023

### Calendar showing period from December 30, 2022 to March 30, 2023

| December 2022 | | | | | | | | January 2023 | | | | | | | | February 2023 | | | | | | | | March 2023 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 day added | | | | | | | | 31 days added | | | | | | | | 28 days added | | | | | | | | 30 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | | | | | 1 | 2 | 3 | 4 | | | | | 1 | 2 | 3 | 4 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 | | 8 | 9 | 10 | 11 | 12 | 13 | 14 | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 | | 15 | 16 | 17 | 18 | 19 | 20 | 21 | | 12 | 13 | 14 | 15 | 16 | 17 | 18 | | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 | | 22 | 23 | 24 | 25 | 26 | 27 | 28 | | 19 | 20 | 21 | 22 | 23 | 24 | 25 | | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 | | 29 | 30 | 31 | | | | | | 26 | 27 | 28 | | | | | | 26 | 27 | 28 | 29 | 30 | 31 |

☐ = Start date (Dec 30, 2022)    ☐ = Final result date (Mar 30, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

# EXHIBIT "M"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**     **Add Days**     **Workdays**     **Add Workdays**     **Weekday**     **Week №**

From **Tuesday, December 27, 2022**
Added 90 days

## Result: Monday, March 27, 2023

### Calendar showing period from December 27, 2022 to March 27, 2023

| December 2022 | | | | | | | | January 2023 | | | | | | | | February 2023 | | | | | | | | March 2023 | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 4 days added | | | | | | | | 31 days added | | | | | | | | 28 days added | | | | | | | | 27 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | | | | | 1 | 2 | 3 | 4 | | | | | 1 | 2 | 3 | 4 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 | | 8 | 9 | 10 | 11 | 12 | 13 | 14 | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 | | 15 | 16 | 17 | 18 | 19 | 20 | 21 | | 12 | 13 | 14 | 15 | 16 | 17 | 18 | | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 | | 22 | 23 | 24 | 25 | 26 | 27 | 28 | | 19 | 20 | 21 | 22 | 23 | 24 | 25 | | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 | | 29 | 30 | 31 | | | | | | 26 | 27 | 28 | | | | | | 26 | 27 | 28 | 29 | 30 | 31 | |

☐ = Start date (Dec 27, 2022)     ☐ = Final result date (Mar 27, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

# EXHIBIT "N"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**    **Add Days**    **Workdays**    **Add Workdays**    **Weekday**    **Week №**

From **Wednesday, December 21, 2022**
Added 90 days

## Result: Tuesday, March 21, 2023

### Calendar showing period from December 21, 2022 to March 21, 2023

| December 2022 10 days added | | | | | | | January 2023 31 days added | | | | | | | February 2023 28 days added | | | | | | | March 2023 21 days added | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | | | | 1 | 2 | 3 | 4 | | | | 1 | 2 | 3 | 4 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 | 29 | 30 | 31 | | | | | 26 | 27 | 28 | | | | | 26 | 27 | 28 | 29 | 30 | 31 | |

☐ = Start date (Dec 21, 2022)    ☐ = Final result date (Mar 21, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.